IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,　　　　　　　　　　　　　Case No. 3:10CR004

　　　　　Plaintiff

　　v.　　　　　　　　　　　　　　　　　　　　　　ORDER

Jose A. Carrizales,

　　　　　Defendant

Pending are defendant's motions to suppress statements (Doc. 79) and physical evidence (Doc. 80). Following an evidentiary hearing, the motions are decisional. For the reasons that follow, the motions will be denied.

On January 8, 2010, F.B.I. agents and Toledo police officers entered the defendant's residence to execute an arrest warrant. Shortly after an F.B.I. SWAT team entered, the defendant was placed in custody. F.B.I. SA Kirwan, leader of the SWAT team, asked the defendant if any firearms were in the house. The defendant stated a pistol was in the kitchen on top of a cabinet. Agents found the gun and some ammunition.

Also present (though the record does not indicate where) when the agents entered was Yolanda Hererra, the lessee of the residence and defendant's girlfriend, and her two minor children.

TPD Officers Marzec and Greenwood spoke with Ms. Hererra. They asked her for consent to search the premises. She said they could do so. The officers waited for another officer to bring a written TPD "waiver of search warrant" form to the house.

After the form arrived, the officers reviewed it with Ms. Hererra. She signed it.

At the conclusion of the evidentiary hearing, I stated that Ms. Hererra had given her consent to search voluntarily. My review of the record confirms that determination. The motion to suppress physical evidence shall, with regard to any evidence obtained after consent was given, be denied.

With regard to the defendant's motion to suppress the firearm recovered after he responded to Agent Kirwan's inquiry. the parties agree that suppression is not required in light of *U.S. v. Patane*, 542 U.S. 630 (2004). In that case the Supreme Court held that physical evidence seized following a defendant's in custody, but unwarned statements is not suppressible.

That leaves the defendant's motion to suppress his statement(s) about the gun. The issue is whether the officers could ask about weapons before giving the defendant his *Miranda* warnings. That, in turn, depends on whether they reasonably apprehended that firearms might be on the premises and, if so, might be accessible by someone other than the police. *U.S. v. Williams*, 483 F.3d 425, 428-29 (6th Cir. 2007).

I find that the agents and officers reasonably apprehended that firearms might be in the house. During a pre-entry briefing, Agent Kirwan reviewed F.B.I. form 888 (Exh. 24) with the SWAT team. The pertinent portion of that form stated:

> Thomas Watters, Timothy Watters, Jose Carrizales and other members of their drug organization are known y case agents to keep handguns and assault type weapons in their possession. Both Timmy Waters and Thomas Watters are said to have weapons in their residences. Handguns have previously been seized from locations where the Watters brothers were storing illegal narcotics and currency in the past. A reliable

source also has reported Thomas Watters to possibly have a grenade in his previous residence.

[Exh. 24].

In addition, the form indicated that the defendant was "believed to reside at the residence with his baby's mother, Yolanda Hererra, and their children. At least two juveniles have been observed at the residence." [*Id.*].

The government argues that, under all the circumstances known to the officers before, and even after they entered, Agent Kirwan was entirely justified in asking the defendant if there was a firearm in the house. As the Sixth Circuit stated in *Williams, supra*, evaluation of whether officers justifiably asked an arrested suspect, without giving him the *Miranda* warnings, if firearms are present

> takes into consideration a number of factors, which may include the known history and characteristics of the suspect, the known facts and circumstances of the alleged crime, and the *facts and circumstances confronted by the officer when he undertakes the arrest*. For an officer to have a reasonable belief that he is in danger, at minimum, he must have reason to believe (1) that the defendant might have (or recently have had) a weapon, and (2) that *someone other than police might gain access to that weapon and inflict harm with it.* The public safety *exception applies if and only if both of those two conditions are satisfied* and no other context-specific evidence rebuts the inference that the officer reasonably could have perceived a threat to public safety.

483 F.3d at 428-29 (emphasis supplied),

No witness at the suppression hearing gave any indication as to where Ms. Hererra and the children were when the agents entered, or where the agenets reasonably believed they might be. The question, then, is whether, when the record is so devoid of information about the likely presence of others in the house, where they were and what they might be doing or able to do when agents asked

3

the defendant about guns, whether I can find that they had "a reasonable belief . . . that someone other than police might gain access to the weapon and inflict harm with it."

This was not a situation in which officers saw the defendant himself reaching toward where a weapon could be (and in fact was) hidden and accessible, *U.S. v. Williams,* 272 Fed.Appx. 473, 478, 2008 WL 919666, *5 (6th Cir. 2008),  an individual encountered on entry was unrestrained and had turned back to the officers to retrieve identification, *Williams, supra*, 483 F.3d at 429, or "officers executing the Warrant were told that they would be looking for drugs, that individuals at the Residence might be armed, and that the Residence had recently been the location of a home invasion, in which someone had been shot." *U.S. v. Baylis*, 2009 WL 454334, *18 (E.D.Tenn.).

This situation here is, rather, more like that in *U.S. v. Hemphill*, 2010 WL 3366137, *5 (S.D.Ohio), in which the court, in the course of concluding that the defendant should have received Miranda warnings, noted, "[t]here is no evidence that anyone other than Hemphill, Gipson, and the four police officers were present in the Wallace Street apartment at the time that Gipson found the ammunition and questioned Hemphill about the weapon. Hemphill was handcuffed and therefore did not pose a threat."

The "public safety" exception on which the government relies originated in *New York v. Quarles*, 467 U.S. 649 (1984). In creating the exception for the protection of the police and public, the Court stated "that there are limited circumstances where the judicially imposed strictures of Miranda are inapplicable" *id.* at 653 n.3, and described its holding as a "narrow exception to the Miranda rule," *Id.,* at 658.

The Sixth Circuit's limitation of the exception to circumstances where the police apprehend that someone else might gain access to a weapon and endanger them and others is controlling. Here

4

the record shows only that officers knew that the defendant lived with his girlfriend – at her house, not his – with three children, two of whom were juveniles of an unspecified age and gender, and that they knew he probably had a weapon. When arrested, the defendant was wearing only briefs, so it was clear to the officers that he had no weapon on his person. Nor could he reach for one under the circumstances described at the hearing.

Absent some additional proof about what the officers reasonably apprehended before or experienced on entering, the question put to the defendant and the response it evoked do not come within the *Williams* reading of the "public safety" exception.

In light of *Williams*, it is, therefore, hereby

ORDERED THAT:

1. The defendant's motion to suppress physical evidence obtained following consent to search be, and the same hereby is denied;

2. The defendant's motion to suppress the firearm seized following his arrest be, and the same hereby is denied; and

3. The defendant's motion to suppress his statement(s) about the firearm be, and the same hereby is granted.

So ordered.

s/James G. Carr
United States District Judge